56 N.J. Super. 330 (1959)
152 A.2d 853
RUTAN ESTATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
TOWN OF BELLEVILLE, A MUNICIPAL CORPORATION OF THE COUNTY OF ESSEX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1959.
Decided June 25, 1959.
*332 Before Judges GAULKIN, SULLIVAN and FOLEY.
Mr. Lawrence E. Keenan argued the cause for appellant.
Mr. Rodman Elfin argued the cause for respondent (Mr. Max Sherman, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
In this action in lieu of prerogative writ the Law Division set aside as invalid that portion of a local improvement ordinance for the installation of water mains which provided for the assessment of the cost *333 thereof upon abutting lands owned by Rutan Estates, Inc. (Rutan). The trial court held that since all other water mains throughout the town of Belleville had been installed at the expense of the town, it was arbitrary and discriminatory to assess Rutan's property for payment in this case. Belleville appeals.
Rutan is the owner of the last large undeveloped tract of land in Belleville, comprising approximately 200 building lots. Belleville owns and operates its own water utility under R.S. 40:62-47 et seq., and the town stipulated that
"The water rates established by the Town of Belleville, pursuant to law, have been pegged at a figure to secure the collection of monies which have completely written off the entire cost of the installation and extension of water mains during the useful life of the water mains. The water system so operated by the defendant Township has been self-sustaining for the past 10 years. No proceeds of funds from general taxation have ever been needed in the operation of the Water Department. The water system has operated at a profit since its inception. No trend to the contrary is indicated for the future. Said profit has existed after all capital expenditures have been paid for, including the costs of any extensions that have been put in, in the past, and after the payment of any interest on indebtedness and all operating expenses."
When the ordinance in question was adopted there were water mains throughout practically all of Belleville, none of which had been assessed as a local improvement.
Rutan had purchased the property, known as the Plenge farm, to develop it for housing. It was informed by the Director of Public Works that Rutan would not be required to pay for the extension of the water mains. It prepared a map of "Rutan Estates, First Section" which was approved by Belleville on February 26, 1957, and a map of the "Second Section" which was approved April 19, 1957. It then signed contracts to build 50 or 60 houses, received building permits from Belleville, and began building. Thereafter, on May 28 there was introduced, and passed on first reading, an ordinance to install the water mains as a general improvement at a cost of $59,000. However, by that time sentiment had *334 begun to make itself felt that this large new development would add problems and expense to Belleville, and that Rutan should be made to pay for these mains to help meet what appellant's brief calls "the impact of school financing, etc." Consequently, two of the members of the governing body, when they voted for this general improvement ordinance on first reading, announced that they would not vote for its final passage. When it did come up on June 11, it was defeated.
On June 25, by a three to two vote, Belleville then passed a resolution that Rutan "shall immediately proceed with construction [of water mains] at its own expense * * * and that unless said Rutan * * * proceeds forthwith as aforesaid, * * * the Board of Commissioners will proceed therewith as a local improvement and assess the costs thereof against the property in question * * *."
Rutan ignored this resolution so, on July 9, Belleville passed on first reading the local improvement ordinance now before us, and on July 23 it was finally adopted. It, too, called for the expenditure of $59,000 for the extension of the water mains, but it provided that the cost be assessed upon the property benefited. On September 10, after competitive bidding, the contract to do the work was awarded; and, in December 1957, the installation was completed. Rutan, which had stood by and had done nothing since June 11, then filed this complaint, asking that there be set aside as invalid so much of the ordinance as provided for the assessment of the cost of the mains.
The trial court held that since (in addition to the facts set forth above) it was admitted that there are enough customers in this tract to make the expenditure a proper and profitable one for the water utility, Rutan was entitled to the extension of the water mains at the expense of the municipality, citing Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229 (1952) and Reid Development Corp. v. Parsippany-Troy Hills Tp., 31 N.J. Super. 459 (App. Div. 1954); and that because no other property in *335 Belleville had theretofore been assessed for the cost of mains, the assessment feature of this ordinance was invalid because arbitrary, capricious and discriminatory.
Belleville seeks to distinguish the two Reid cases upon the ground that in those cases the municipality did not assert the right, which Belleville here asserts, to construct water mains under N.J.S.A. 40:56-1 as a local improvement. That statute, says Belleville, gives it the absolute right to do so regardless of how profitable its water utility may be.
N.J.S.A. 40:56-1 is the general statute which provides what works a municipality may undertake as a local improvement. Among them are:
"j. The installation of service connections to a system of water, gas, light, heat or power works owned by a municipality or otherwise, including all such works as may be necessary for supplying water, gas, light, heat or power to real estate for whose benefit such services are provided; service connections including the laying, construction or placing of mains, conduits or cables in, under or along a street, alley or other public highway or portion thereof.
k. The construction, reconstruction, enlargement or extension of any water main or other works for the distribution of water supplied by the State or any of its political subdivisions, or any public agency of any of the same."
Paragraph (j) has been in the statute in substantially the same language since 1921 (L. 1921, c. 131), while paragraph (k) was added by L. 1951, c. 175. The only distinction between (j) and (k) is the source of the water, which, in the case at bar, is not material. See also Smith v. Borough of Florham Park, 3 N.J. Misc. 355 (Sup. Ct. 1925).
But, as the trial court held, even though this statute "confers the requisite power upon the town to assess water main extensions as local improvements, it nevertheless does not contemplate the unreasonable exercise of such power. The mere presence of statutory power does not sanction its arbitrary or discriminatory abuse." Cf., Lake Intervale Homes, Inc. v. Parsippany-Troy Hills Tp., 47 N.J. Super. 334, 351 (Law Div. 1957), where Justice (then Judge) Hall suggested that mains might be extended under N.J.S.A. *336 40:56-1 "at least where considerations were not such as to compel installation at public expense under the principle discussed in the two Reid cases."
We need not determine in this case whether a municipality must pay for the extension of mains in every instance in which its water utility is operating at a profit and the extension will be a sound investment. All we need, and do, determine here is that when water mains have been built throughout a municipality without assessment and the water utility is in the position here stipulated it is arbitrary and discriminatory, and therefore unlawful, to demand that the last remaining unserved parcel, representing a small fraction of the municipality's total area, pay for the extension of mains to serve it. Therefore we agree with the trial court that the portion of the ordinance here involved, which provides for such assessment, is invalid. Reid Development Corp. v. Parsippany-Troy Hills Tp., supra, 10 N.J. at pages 232, 235. Cf., River Edge Homes, Inc. v. Borough of River Edge, 130 N.J.L. 376 (Sup. Ct. 1943).
Finally, appellant argues that Rutan was barred from prosecuting this action by R.R. 4:88-15(b), sub-sections (5) and (12), which provide:
"(b) No proceeding in lieu of prerogative writ shall be commenced

* * * * * * * *
(5) to review an ordinance, authorizing the construction of a railroad siding or sidings, or an ordinance or resolution for a public improvement in any municipality, after 30 days from the date of the passage or adoption of such ordinance or resolution.

* * * * * * * *
(12) to review an ordinance for an improvement after the contract therefor shall have been awarded."
Rutan counters by saying that it was not barred because it challenged the municipal action upon constitutional grounds, an attack which is excepted from the operation of R.R. 4:88-15, citing Schack v. Trimble, 28 N.J. 40 (1958), Robbins v. Jersey City, 23 N.J. 229 (1957) and Holloway v. Pennsauken Tp., 12 N.J. 371 (1953). However, these *337 cases have said that to come within the exception the constitutional questions must be "substantial." What is meant by "substantial" in this context has not been clearly defined. Of pertinence here is that it is not certain whether it includes a challenge, such as here, which is based on the impact of an ordinance upon the plaintiff rather than upon the power of the municipality to pass such ordinances altogether. See Holloway v. Pennsauken Tp., supra; Lucas v. Board of Com'rs of Town of Montclair, 128 N.J.L. 149 (Sup. Ct. 1942), affirmed 130 N.J.L. 534 (E. & A. 1934); West Shore R.R. Co. v. Borough of Begota, 7 N.J. Misc. 972 (Sup. Ct. 1929); Delaware River, etc., Co. v. Tp. Committee of Haddon Tp., 5 N.J. Misc. 210 (Sup. Ct. 1927); Lehigh Valley R.R. Co. v. City of Dover, 80 N.J.L. 63 (Sup. Ct. 1910); Cook v. Borough of Allendale, 79 N.J.L. 285 (Sup. Ct. 1910); Borton v. City of Camden, 65 N.J.L. 511 (Sup. Ct. 1900); Schulting v. City of Passaic, 47 N.J.L. 273 (Sup. Ct. 1885); Culver v. Mayor, etc., of Jersey City, 45 N.J.L. 256 (Sup. Ct. 1883); Kirkpatrick v. Commissioners, 42 N.J.L. 510 (Sup. Ct. 1880); Annotation, 9 A.L.R. 738. Certainly nothing may be asserted as a constitutional question which may be raised upon an appeal from assessments under N.J.S.A. 40:56-54. Holloway v. Pennsauken Tp., supra.
As was pointed out in Schack v. Trimble, supra, there is no express provision in R.R. 4:88-15 which excludes constitutional questions from its operation. Sub-section (c) was added to the rule as a "catch-all" to include, among other things, the attacks upon constitutional grounds which had long been recognized as exceptions to this rule, and to the statutes which were forerunners of the rule. Cf., R.S. 40:121-16; R.S. 40:147-2; R.S. 40:56-20.1, as amended L. 1953, c. 37, § 185; R.S. 40:56-40, as amended L. 1953, c. 37, § 187.
Sub-section (c) of the rule provides "Where it is manifest that the interests of justice require, the court may enlarge the period of time * * *." Rutan argues that *338 it is entitled to the benefit of (c) not only because its attack is on constitutional grounds, but because even if no constitutional issue were involved (and, a fortiori if the constitutional question raised is not substantial), the time within which to sue under this rule was properly enlarged by the court below for the reason that, under the circumstances of this case, "it is manifest that the interests of justice require[d]" such enlargement. It is doubtful whether that is so, principally because Rutan knew in June that Belleville refused to pay for the mains, yet, instead of suing then, Rutan waited not only beyond the first introduction of the ordinance (July 9) and its final passage (July 23) and the award of the contract (September 10), but until every foot of the mains had been installed. Rutan admits it did so with knowledge of the rule, as a calculated risk, to avoid delay. It says that if it had sued earlier to compel the installation of mains, or to challenge the ordinance, Belleville would not have installed the mains until the conclusion of protracted litigation. Rutan therefore elected to stand by while the mains were installed, and to take its chances upon being in time to fight the assessment later. There may have been reason for Rutan's fear, for Belleville admits that the only prejudice which it suffered by suit after rather than before the installation is that it was deprived of the opportunity to "negotiate with the plaintiff and if negotiations followed the Lake Intervale trend [47 N.J. Super. 334] Belleville could have saved at least half of the cost." However "exceptions to the time limitations imposed upon the in-lieu procedure should be but exceptionally condoned, and only in the most persuasive circumstances." Robbins v. Jersey City, supra, 23 N.J. at page 238.
It seems to us that we do not need to decide whether the constitutional attack here made is "substantial" within the meaning of the cases, or whether (c) was properly invoked upon considerations of manifest justice, because, in our opinion, this complaint was filed within the period permitted by sub-section (b)(2) of the rule, which provides:
*339 "* * * to review an assessment or award made for any municipal improvement after 30 days from the date of the confirmation of such assessment or award; * * *"
When a public improvement ordinance provides for an assessment, any assessment made under it may be challenged even after it is too late to attack the ordinance itself, and even though the attack may implicate the validity of the ordinance itself. Yanuzzi v. Mayor and Council of Borough of Spring Lake, 22 N.J. 567 (1956); De Marmon v. Borough of Roselle, 8 N.J. Misc. 904 (Sup. Ct. 1930); Buckingham Realty Co. v. Town of Montclair, 8 N.J. Misc. 891 (Sup. Ct. 1930); Beattie Mfg. Co. v. Little Falls Tp., 7 N.J. Misc. 161, 163 (Sup. Ct. 1929); Lehigh Valley R.R. Co. v. City of Dover, supra; Rosell v. Neptune City, 68 N.J.L. 509 (Sup. Ct. 1902); Borton v. City of Camden, supra; Culver v. Jersey City, supra; Kirkpatrick v. Commissioners, supra; Kerrigan v. Township of West Hoboken, 37 N.J.L. 77 (Sup. Ct. 1874); State (Jeremiah Doyle & Co.) v. Mayor, etc., of City of Newark, 30 N.J.L. 303 (Sup. Ct. 1863).
Since here the only attack was on the assessment feature of the ordinance, it was therefore within time  indeed, if anything, premature, since no assessment has, as yet, been made. Cf., Borton v. City of Camden, supra. No objection was made by Belleville on the ground of such prematurity, nor indeed could such an objection be made successfully, in view of our present day attitude to afford liberal quia timet and declaratory relief.
The judgment is affirmed.