IN THE MATTER OF THE APPLICATION OF THE BUCKEYE PIPE LINE COMPANY, A CORPORATION OF THE STATE OF OHIO, DULY LICENSED TO DO BUSINESS IN THE STATE OF NEW JERSEY, TO FIX THE COMPENSATION TO BE PAID FOR THE LANDS OF JOHN E. COOLEY, SITUATE IN THE TOWNSHIP OF KINGWOOD, COUNTY OF HUNTERDON, STATE OF NEW JERSEY, TO BE TAKEN FOR PUBLIC USE.

Argued December 3, 1956—Decided January 14, 1957.

*Mr. Franklin W. Kielb* argued the cause for the appellant John E. Cooley.

*Mr. Ryman Herr* argued the cause for the respondent Buckeye Pipe Line Company (*Messrs. Herr* and *Fisher*, attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from the judgment of the Appellate Division of the Superior Court unanimously

affirming the order of the Law Division which in turn had dismissed for lack of prosecution the appeal of John E. Cooley, a landowner, from an award of condemnation commissioners. We granted the landowner's petition for certification, 22 *N. J.* 223 (1956).

Separate condemnation proceedings were instituted by the Buckeye Pipe Line Company in February 1952, seeking to secure rights-of-way over the lands of Elden E. Cooley and his son, John E. Cooley. In April 1952 the condemnation commissioners appointed by order of the Superior Court filed their report of the appraisal of the property taken indicating the amount of damages to be paid the two landowners by the Pipe Line Company. On May 8, 1952 the two landowners filed separate notices of appeal to the Law Division of the Superior Court from the commissioners' awards and gave notice in the language of *R. S.* 20:1–16, as it then existed, "to frame the issue, to strike a jury, and to fix a date for the trial of the appeal." These applications were adjourned on several occasions and not finally disposed of until December 4, 1952, when orders were entered providing for such relief, except that no provision was made for a trial date.

Meanwhile, the amount of the commissioners' awards was paid into court pursuant to *R. S.* 20:1–12 and the Pipe Line Company entered into possession, completed the laying of its pipe on the properties and since October 15, 1952, has been using the pipe for the transportation of petroleum products.

On January 5, 1953 the attorney for the Pipe Line Company wrote to the attorney who represented both landowners at this time, suggesting that because of the proximity of the lands to each other and the similarity of the issues involved in each case, both matters should be tried before one jury to save time and expense. The possibility of such a disposition was discussed informally with and tentatively approved by the then assignment judge of the Superior Court for Hunterdon County. The attorney for the landowners agreed

with the suggestion made and so indicated in a letter to opposing counsel on January 7, 1953, but no formal stipulation or order was ever entered making provision for such a course of action.

Thereafter, a jury was actually struck only in the John E. Cooley matter on January 21, 1953, and it does not appear that any such action was taken in the Elden E. Cooley case. This, presumably, was in furtherance of the agreement made.

At this stage in the proceedings both landowners moved in the Law Division "to dismiss the petition for the appointment of commissioners and all proceedings subsequent thereto" on the ground that the court lacked jurisdiction over the subject matter, but the relief sought was denied. Then, on February 7, 1953, another attorney was substituted in the Elden E. Cooley matter and immediately thereafter he sought and obtained an order granting a stay in the Elden E. Cooley case pending the disposition of an appeal to be taken by him to the Appellate Division from the denial of the motion to dismiss. No such stay was sought by John E. Cooley, but a similar appeal to the Appellate Division appears not to have been prosecuted pending the determination of the appeal in the Elden E. Cooley matter, although no formal stipulation or order to that effect was made.

Subsequently, the Appellate Division dismissed the Elden E. Cooley appeal and a further appeal to this court was similarly disposed of on October 19, 1953; see *In re The Buckeye Pipe Line Co.*, 13 *N. J.* 385. A rehearing was denied, November 16, 1953. In the meantime, the appeal of John E. Cooley to the Appellate Division was dismissed for lack of prosecution on November 13, 1953.

There is indication in the record that John E. Cooley was in the military service until September, 1953. Whether he was so engaged since the commencement of the action does not appear.

No action was taken between November 1953 and May 1954, in either case. On May 5, 1954, just short of the six-month period provided for by *R. R.* 4:42–2(*a*) after

which involuntary dismissal may be ordered, the attorney for Elden E. Cooley wrote to Judge Hall, who in the meantime had been designated the assignment judge for Hunterdon County, indicating that he was ready for a jury trial of the issue. This fact did not appear in the record on appeal to the Appellate Division in this case and became known only as a result of a dispute between counsel on the oral argument.

Some time after this letter of May 5, 1954, but in the same month, counsel in both cases were requested by Judge Hall to appear before him in order that he might determine the status of the matters. Thereafter, both Judge Hall and Judge Schenk disqualified themselves from sitting on the trial of the case because during their practice as attorneys they had represented parties in these matters. On May 13, 1954 the late Judge Cranmer was designated to hear these cases. Judge Cranmer then became ill before the cases could be scheduled for trial and was unable to hear them before his death in December 1954.

In November 1954 the attorney for Elden E. Cooley again wrote to Judge Hall that he was prepared to proceed to trial. Then after the death of Judge Cranmer, Judge Tallman was designated to hear both matters.

On January 7, 1955 Judge Hall again wrote to the three attorneys of record representing the parties in both cases to advise them that Judge Tallman had been designated in place of Judge Cranmer and indicating that Judge Tallman would "be in touch with counsel in the near future to consider the matter of * * * disposition at as early a date as possible." At the same time Judge Hall wrote to Judge Tallman and reviewed the procedural matters in the cases and indicated that Judge Tallman's schedule did not permit the trial of them in Hunterdon County before April 25, 1955; he also questioned whether the John E. Cooley case was not subject to dismissal for lack of prosecution.

It was not until June 7, 1955 that Judge Tallman wrote to the respective attorneys informing them that both matters

had been set down for trial on June 29 and June 30 and that a jury panel would be called for those dates.

On June 24, 1955 the Pipe Line Company moved to dismiss these appeals from the commissioners' awards, and on July 27, 1955 Judge Tallman, by virtue of the discretionary power granted by *R. R.* 4:42–2(a), which provides that the court may dismiss any civil action for failure to prosecute for six months, granted the motion. In finding that the landowners had not diligently prosecuted their respective causes, he was unfavorably impressed by the fact that neither landowner, since notification of the designation of Judge Tallman as the new trial judge, had taken any measures to bring these matters on for the trial. But the landowners and their attorneys may well have thought from the tenor of Judge Hall's letter of January 7, 1955, above quoted, that they would in fact hear from Judge Tallman "in the near future" and relied on it. Nor was there any indication that Judge Tallman, or later the Appellate Division, had any knowledge of the May 5, 1954 letter to Judge Hall concerning the Elden E. Cooley matter or of the agreement between counsel to try these cases together.

The present attorney for Elden E. Cooley was not formally substituted in the John E. Cooley matter until September 1955, when the appeals were taken to the Appellate Division from Judge Tallman's dismissal.

The Appellate Division affirmed the dismissal only as to John E. Cooley. It reversed the dismissal as to Elden E. Cooley, because it found that there was some merit in the contention that the attorney for Elden had, within the six months' period subsequent to the termination in November 1953 of the stay of proceedings by the adverse result on the appeal, *i. e.*, May 5, 1954, written to the assignment judge indicating that he was ready to proceed with his matter at the convenience of the court. Moreover, it said, that in view of recent statutory changes governing condemnation proceedings, *N. J. S. A.* 20:1–1 *et seq.*, and changes in the rules as to struck juries, *R. R.* 4:49–4, there was some confusion here as to the proper procedure to be followed.

Consequently, the Appellate Division were of the opinion that the delay in the Elden E. Cooley matter was not entirely his fault.

It is apparent that on the appeal here the Appellate Division was, like Judge Tallman, not apprised of the fact of the agreement made between counsel early in the cases that both matters would be tried together. An attempt to bring such fact to the court's attention was made on a petition for rehearing, but without success.

The appendix presented in this case was inadequate. It omitted matters very material to the issue and was justifiably criticized by the Appellate Division as being put together "without regard for either logic or chronology." Were it not for the disagreement between counsel at the oral argument, the May 5, 1954 letter might never have become known to the court, to the salvation of Elden E. Cooley. Then, when a further inadequacy in the preparation of the case was exhibited on the petition for rehearing, the court was not without considerable basis for refusing to be imposed upon further.

We are constrained in the interest of justice to prevent an unfair result in spite of the inadequacy of the preparation on behalf of the landowners and further in spite of the dilatoriness on the part of all the parties that is evident throughout these proceedings. It is apparent, however, that neither of the courts below considered the agreement of counsel that there was to be but one trial in these cases, or the very obvious fact—when pointed out—that the case of the father was being used in some respects as the leader, while that of the son was being held in a state of suspension until both cases were reached for trial. In such circumstances it would seem that both cases should have been treated alike. If the May 5 letter to Judge Hall from counsel for Elden was sufficient to save that case from dismissal, then, the companion case should likewise be saved and the agreement between counsel respected to that extent, for such agreements are to be encouraged when their practical effect is to facilitate the prompt administration of

justice. Such agreements should, however, be made clear by formal stipulation and consented to by the court and made part of the record.

This case presents by far the longest delay that has come to our attention since the institution of our new court system over eight years ago. Such delays in the law were one of the primary causes that led to the development of a modern and efficient system for the administration of justice now in force in this State. These delays are something that can no longer be condoned or tolerated. In this case, as we have seen, some of the delaying circumstances were beyond the control of counsel, but others were not. They are to be criticized as being totally out of character with our present concepts of judicial administration. Better justice is not something that can be enjoyed without all concerned in the judicial process striving hard and consistently for it, and any conduct that hampers progress in this field is to be emphatically condemned.

The judgment of the Appellate Division affirming the dismissal of the John E. Cooley matter is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For affirmance*—None.